EOD

03/12/2009

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ABBAS KAFI, | § | Case No. 08-41023 |
| | § | (Chapter 7) |
| Debtor. | § | |

## MEMORANDUM OPINION REGARDING MOTION TO DISMISS

This matter is before the Court on the Motion to Dismiss filed by the United States Trustee (the "Trustee") pursuant to 11 U.S.C. § 707(b) and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 1017(e). The Motion to Dismiss was timely filed and properly served on the Debtor, Abbas Kafi. The Court heard the Motion to Dismiss on August 12, 2008, at which time the parties presented argument and evidence. At the conclusion of the hearing, the Court invited the parties to file post-hearing briefs and scheduled the matter for a later ruling. The following constitutes the Court's findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052, 9014(b) and 9021.

### JURISDICTION

This contested matter arises under 11 U.S.C. § 707(b) and is a core proceeding under 28 U.S.C. § 157(b)(2). This Court, therefore, has jurisdiction to enter a final order pursuant to 28 U.S.C. §§ 157(a) and 1334.

### BACKGROUND

The Debtor initiated this case by filing a petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on April 24, 2008. A meeting of creditors was conducted on May 28, 2008 pursuant to §341 of the Bankruptcy Code. On June 30, 2008, the Trustee filed the instant Motion to Dismiss.

1

The facts are generally not in dispute. The Debtor owns a home in Plano, Texas, where he lives with and supports his wife, his adult daughter, and his mother. The Debtor values his home at $400,000 in his bankruptcy schedules and estimates the amount of his mortgage lender's secured claim at $315,000. The Debtor pays $3,108 each month for his mortgage, homeowners' insurance and property taxes.[1] The Debtor's other monthly expenses include $500 for electricity, $200 for telephone service, $950 for food, $450 for transportation (not including car payments), and $572 for tuition and books for his daughter.

The Debtor owns two vehicles – a 1996 Mercedes and a 1994 Summit. The Debtor owns the vehicles free and clear of all liens and is not making any note or lease payments on the two vehicles. However, the Debtor owes $102,779.12 in unsecured, non-priority debt. Approximately $100,000 of this unsecured debt relates to charges placed on credit cards. As of the petition date, one of the Debtor's unsecured creditors had sued him to collect on a debt, and another unsecured creditor had obtained a judgment against him.

It is uncontested that the Debtor's current gross monthly income of $8,333.00 under §101(10A) of the Bankruptcy Code, when extrapolated into an annual amount, exceeds the median family income for two-person households in this state.[2] Thus, the Debtor was required to complete the entirety of Form 22A. The Debtor's Form 22A contained a vehicle operation expense of $412, which is the maximum allowed by the IRS Local Standards for two vehicles. The Debtor's Form 22A contained a $478

---

[1] The Debtor's Schedule J – Current Expenditures of Individual Debtor(s) mistakenly indicates that property taxes and homeowner's insurance are not included in his monthly mortgage payment.

[2] As of the petition date, the median family income for a four-member household in Texas was $59,808.

2

deduction for vehicle ownership expenses for each of his two vehicles, which is the maximum allowed by the IRS Local Standards, for a total claimed vehicle ownership expense of $956. With these deductions included in the calculation, the Debtor's monthly disposable income is ($172.74).

The Trustee asserts that a deduction for monthly ownership expenses pertaining to two vehicles for which the Debtor owes no such expenses should not be permitted. The Trustee, however, notes that the Debtor did not assert but appears to be entitled to an additional operating expense of $400 in light of the age of the Debtor's unencumbered vehicles. When the Debtor's disposable income calculation is corrected to omit the two deductions of $478 and to add a deduction of $400, the Debtor's monthly disposable income is $383.26. Thus, the Trustee contends that a presumption of abuse arises in this case pursuant to §707(b)(2) of the Bankruptcy Code and that the Court should dismiss this case. The Trustee also contends that the totality of the circumstances of the Debtor's financial situation demonstrates abuse and that the Court should dismiss this case pursuant to §707(b)(3).

## DISCUSSION

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA") became fully effective on October 17, 2005. One goal of the BAPCPA was "to address what Congress perceived to be certain abuses of the bankruptcy process. Among the abuses identified by Congress was the easy access to [C]hapter 7 liquidation proceedings by consumer debtors, who if required to file under [C]hapter 13, could afford to pay some dividend to their unsecured creditors." *In re Hardacre,* 338 B.R. 718, 720 (Bankr. N.D. Tex. 2006) (citing 151 CONG. REC. S2459, 2469-70 (Mar. 10, 2005)). "The

principal method implemented to steer debtors away from Chapter 7 and into Chapter 13 is the new version of §707," which is usually referred to as the "means test." *In re Singletary,* 354 B.R. 455, 458-59 (Bankr. S.D. Tex. 2006).

Prior to the enactment of the BAPCPA, §707(b) of the Bankruptcy Code provided for the dismissal of a case when "the granting of relief would be a substantial abuse of the provisions of this chapter."[3] The BAPCPA altered the circumstances under which a case may be dismissed by removing the "substantial" qualifier and providing for "abuse" to be determined pursuant to either the new §707(b)(2) or the new §707(b)(3). When a debtor's disposable income exceeds fixed amounts (*i.e.*, when the debtor fails the means test), the new §707(b)(2) creates a presumption of abuse. When the presumption of abuse does not arise (*i.e.,* when the debtor passes the means test), the new §707(b)(3) looks to the debtor's intent in filing the bankruptcy petition and the totality of the circumstances to determine abuse. Such means test standards are implemented in Chapter 7 cases through the calculation of "disposable income" built into the new Form 22A.[4]

---

[3] Section 707(b) was one of several consumer credit amendments added to the Bankruptcy Code in 1984. Congress had two reasons for originally enacting §707(b):

> First, it wanted to address the problem of consumer debtors taking inordinate advantage of modern easy-credit practices, running up consumer debt, and then seeking discharge of that debt through Chapter 7 bankruptcy. Congress apparently felt §707(b) would remedy the problem of consumer debtors unfairly taking advantage of Chapter 7 even though they are able over time to pay off their debts. Second, Congress wanted to give the courts a specific mechanism to more readily dismiss petitions by abusive consumer debtors. As the bankruptcy court aptly noted, §707(b) was not enacted to narrow and discourage court review of abuse cases to those involving consumer debt, but to broaden and encourage such review in light of the fact many bankruptcy courts were not dismissing abusive consumer petitions.

*Stewart v. United States Trustee (In re Stewart),* 175 F.3d 796, 812-13 (10th Cir. 1999) (citations omitted).

[4] After Congress enacted the BAPCPA, three new Official Forms (22A, 22B and 22C) were created for individuals to complete and file in Chapter 7, 11, and 13 cases.

4

When performing the calculations of the means test, a debtor first must calculate his current monthly income. If the debtor's monthly income exceeds the median monthly income for the state in which the debtor resides, the debtor must complete the expense portion of Form 22A. The debtor may then deduct from his current monthly income, in addition to other expense deductions outlined under §707(b)(2)(A)(ii)-(iv), all of his

> *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

11 U.S.C. §707(b)(2)(A)(ii)(I) (emphasis added). The IRS National Standards designate amounts that the IRS considers reasonable expenditures for five categories of expenses: food, clothing, household supplies, personal care, and miscellaneous expenses. The IRS Local Standards designate amounts that the IRS considers reasonable for two additional categories: housing and transportation expenses. The transportation expense includes both ownership and operating costs.

Here, the parties have differing interpretations of the word "applicable" as used in §707(b)(2)(A)(ii)(I). The Trustee argues that the Debtor is not entitled to claim the ownership expense for two vehicles since he does not currently make a lease or loan payment on any vehicles. The Debtor responds that he is entitled to claim the ownership expense because he owns two cars. The Debtor also argues that allowing him to claim the full amount of the Local Standard for transportation ownership expenses is consistent with the Trustee's policy of allowing debtors with no car payments to claim an expense of $200 per car.

It is well settled that "when the statute's language is plain, the sole function of the courts -- at least where the disposition is not absurd -- is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) (citations and internal quotations omitted). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 254 (1992). Only in cases where the language of the statute is ambiguous or leads to absurdity should the Court look beyond the statute to try to ascertain the legislative intent. However, for language to be considered ambiguous, it must be susceptible to "more than one reasonable interpretation" or "more than one accepted meaning," *Carrieri v. Jobs.com, Inc.,* 393 F.3d 508, 519 (5th Cir. 2004) (citing *U.S. v. Kay,* 359 F.3d 738, 743 (5th Cir. 2004)), and the canon against absurdities is a very narrow exception to the plain meaning rule that is only employed "where it is quite impossible that Congress could have intended the result ... and where the alleged absurdity is so clear as to be obvious to most anyone." *Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 470-71 (1989) (Kennedy, J. concurring in judgment).

Turning to the language of §707(b)(2)(A), the Debtor focuses on Congress' placement of the words "applicable" and "actual" in the same sentence of §707(b)(2)(A)(ii)(I) to describe the IRS standards and the other necessary expenses, respectively. The Debtor argues that "Congress drew a distinction in the statute between 'applicable' expenses on the one hand and 'actual' expenses on the other." *In re Farrar-Johnson,* 353 B.R. 224, 230 (Bankr. N.D. Ill. 2006). Unlike the Internal Revenue Manual ("<u>IRM</u>"), which explicitly provides that the Local Standards for housing and transportation expenses serve merely as caps on actual expenditures, §707(b)(2)(A)(ii)(I)

references the "applicable" Local Standards without imposing such a restriction. *See* IRM §5.15.1.7(4), http://www.irs.gov/part5/ch15s01.html. Thus, the Debtor argues that "applicable" merely limits the transportation expense to the number of vehicles owned, regardless of whether there is any actual ownership expense. *See In re Fowler*, 349 B.R. 414, 419 (Bankr. D. Del. 2006).

Bankruptcy and district court decisions from within the Fifth Circuit have uniformly rejected the Debtor's argument. *See, e.g., In re Meade*, 384 B.R. 132 (Bankr. W.D. Tex. 2008) (holding that no ownership allowance could be claimed on a car owned free and clear of liens); *In re Ceasar*, 364 B.R. 257, 262 (Bankr. W.D. La. 2007) (same); *In re Brown*, 376 B.R. 601 (Bankr. S.D. Tex. 2007) (same); *In re Devilliers*, 358 B.R. 849 (Bankr. E.D. La. 2007) (same); *In re Pampas*, 369 B.R. 290 (Bankr. M.D. La. 2007) (same); *In re Barraza*, 346 B.R. 724 (Bankr. N.D. Tex. 2006) (same); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006) (same); *In re Lara,* 347 B.R. 198 (Bankr. N.D. Tex. 2006) (same); *In re Oliver*, 350 B.R. 294 (Bankr. W.D. Tex. 2006) (same). In performing the "means test" calculation, these courts have held that debtors cannot deduct as an "applicable monthly expense" a vehicle ownership expense for a vehicle that they own outright. The Court agrees with these cases and with the Trustee based upon the plain language of §707(b)(2)(A)(ii)(I).

In interpreting §707(b)(2), the Court gives undefined terms, such as "applicable" and "actual," their common, ordinary meaning. S*ee generally Moskal v. United States,* 498 U.S. 103, 108 (1990). The term "applicable" is not commonly understood to mean "non-existent" or "fictional" expenses. *See Neary v. Ross-Tousey (In re Ross-Tousey)*, 368 B.R. 762, 765 (E.D. Wis. 2007). "Applicable" is defined as "capable or suitable for

7

being applied: APPROPRIATE." MERIAM WEBSTER'S COLLEGIATE DICTIONARY 56 (10th ed. 1998). "Applicable" is synonymous with "relevant, pertinent, apposite, apropos, germane, material." WEBSTER'S NEW DICTIONARY OF SYNONYMS 53 (1984). The most natural reading of §707(b)(2) is that the Local Standards for vehicle ownership expenses are only "applicable" if the debtor makes a loan or lease payment on a vehicle. The amount of the ownership deduction is to be determined not by the actual amount of that payment, but rather whatever is the "applicable" amount under the Local Standards. *In re Ross-Tousey,* 368 B.R. at 765. *See also In re Brown*, 376 B.R. at 606 (approving *Ross-Tousey's* interpretation).

Additional support for this statutory interpretation is found in the IRM. The National and Local Standards, to which §707(b)(2)(A)(ii)(I) refers, are used by the IRS to determine a taxpayer's ability to pay a delinquent tax liability. The IRM includes a Financial Analysis Handbook, which contains "instructions for analyzing the taxpayer's financial condition" in order to help IRS field agents apply the National and Local Standards and "determine appropriate case resolution" (*e.g.,* collect, compromise, or report as uncollectible). IRM §5.15.1.1, http:///www.irs.gov/irm/part5/ch15s01.html. According to the Financial Analysis Handbook:

> The transportation standards consist of nationwide figures for loan or lease payments referred to as ownership costs, and additional amounts for operating costs broken down by Census Region and Metropolitan Statistical Area. Operating costs include maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls. If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. *If a taxpayer has a car, but no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense.* There is a single nationwide allowance for public transportation for taxpayers with no vehicle.

IRM §5.15.1.7(4.B), http://www.irs.gov/irm/part5/ch15s01.html (emphasis added). Although the Financial Analysis Handbook does not allow debtors to claim an ownership expense where the debtor has no car payment, debtors who own vehicles that are either six years old or have over 75,000 miles are allowed an additional $200.00 per month in their vehicle operating expense. *See* IRM, Part 5, Chapter 15, §5.8.5.5.2(3), http://www.irs.gov/irm/part5/ch08s05.html.

The language of §707(b)(2) indicates that Congress incorporated the logic and rationale used by the IRS to define the National and Local Standards.[5] Congress did not simply state that the debtor's monthly expenses shall be the monthly expense amounts specified under the National and Local Standards but, rather, that "[t]he debtor's monthly expenses shall be *the debtor's applicable* monthly expense amounts specified under the National and Local Standards" *In re Slusher*, 359 B.R. 290, 309 (Bankr. D. Nev. 2007) (emphasis in original). "Congress' decision to use the IRS standards within the Bankruptcy Code strongly suggests that courts should look to how the IRS determined those standards; that is, as to how the IRS would have applied them in similar circumstances." *Id.* If the standards were applied without reference to the IRS' practices with respect to the allowance of transportation expense deductions, for example, then

---

[5] A prior version of the BAPCPA defined "projected monthly net income" for the means test by expressly referencing the Internal Revenue Service financial analysis. *In re Fowler*, 349 B.R. at 419. This language was replaced by the language currently in §707(b)(2)(A), which states that a debtor gets the "applicable monthly expense amounts specified under the National and Local Standards" *Id. (*citing 11 U.S.C. § 707(b)(2)(A)(ii)(I)). However, the failure of Congress to adopt the prior version of BAPCPA offers limited aid in the construction of the legislation that was eventually passed. S*ee, e.g., U.S. v. Pan American Refining Corp.,* 219 F.2d 685, 689 (5th Cir. 1955). Notably, the legislative history accompanying BAPCPA specifically references the Financial Analysis Handbook as the source of the applicable expenditure amounts under §707(b). *See* H.R. Rep. 109-31, at 13-14 (2005) (footnotes omitted), *reprinted in* 2005 U.S.C.C.A.N. 88, 99-100 ("In addition to other specified expenses, the debtor's monthly expenses-exclusive of any payments for debts (unless otherwise permitted)-must be the applicable monthly amounts set forth in the Internal Revenue Service Financial Analysis Handbook as Necessary Expenses under the National and Local Standards categories and the debtor's actual monthly expenditures for items categorized as Other Necessary Expenses.").

9

there would be no allowance of an extra deduction for an older vehicle – in other words, the extra deduction for an older vehicle is "just as much an administrative determination by the IRS as to what a taxpayer can afford as is the specification of when the expense is allowed." *Id.* Thus, while courts are not bound to follow the IRM, the IRM may be -- and often is -- used as a guide for interpreting §707(b)(2) of the Bankruptcy Code. *See, e.g., In re Meade,* 384 B.R. at 137 fn 7 ("While courts are not bound to follow IRS procedures and standards, they should be used as guides for interpreting the Bankruptcy Code.") (citations omitted).

The Court acknowledges that one of the primary purposes of the BAPCPA was "to impose a 'rigid and inflexible' set of expense standards." *In re Scarafiotti,* 375 B.R. 618, 625 (Bankr. D. Colo. 2007). (quoting H.R. Rep. 109-31 at 12, U.S. CODE CONG. & ADMIN. NEWS 2005, p. 88). Congress intended to remove from bankruptcy courts much of the discretion they had when it came to the confirmation of plans and the dismissal of cases under pre-BAPCPA practice. 151 CONG. REC. S1820, 1823 (March 1, 2005) ("The means test in this bill wipes out the judge's discretion."). However, the overriding purpose of the means test, as evidenced by the President's remarks when signing the BAPCPA into law, was to restrict Chapter 7 relief to debtors who cannot afford to make payments to unsecured creditors in Chapter 13. *In Mravik,* 399 B.R. 202, 210 (Bankr. E.D. Wis. 2008).[6] The Debtor's interpretation of §707(b)(2) would not curb a perceived abuse of Chapter 7, but would create a new one.

---

[6] "Under the new law, Americans who have the ability to pay will be required to pay back at least a portion of their debts. Those who fall behind their state's median income will not be required to pay back their debts." *Id. (*citing Press Release, White House Press Office, President Signs Bankruptcy Abuse Prevention, Consumer Protection Act (April 20, 2005), http://www.whitehouse.gov/news/releases/2005/04/20050420-5.html.)

10

The Court concludes that the Debtor in this case has the means to repay a portion of his unsecured debts and that a presumption of abuse arises in this case under §707(b)(2)(A). This presumption "may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces." 11 U.S.C. §707(b)(2)(B)(i). The Debtor in this case failed to allege or establish any special circumstances. Accordingly, the Debtor has the option of having his case dismissed or converted to a Chapter 13 proceeding, in which he may obtain a discharge only after repaying a set amount to his creditors. *See* 11 U.S.C. §707(b)(1).

## **CONCLUSION**

For all of the foregoing reasons, the Court concludes that the Trustee has established by a preponderance of the evidence that allowing the Debtor to continue in a Chapter 7 proceeding would be an abuse of the bankruptcy system. The Court, having determined that the Debtor is presumed to have abused the Chapter 7 system by filing his petition, need not reach the issue of whether the totality of the circumstances demonstrates abuse under §707(b)(3) of the Bankruptcy Code. An order will be entered dismissing the Debtor's bankruptcy petition unless the Debtor converts this case to a case under Chapter 11 or Chapter 13 on or before fourteen days from the entry of the order.

Signed on 3/12/2009

_____*Brenda T. Rhoades*_____ SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE